**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandra Lee Folsom, | No. CV-14-01298-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Sandra Lee Folsom seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     BACKGROUND**

Plaintiff was born in April 1953. She graduated from high school and worked as a waitress. In 2010, Plaintiff moved from Colorado to Phoenix, Arizona, to live with her mother in the same trailer park where her brother and sister live. Plaintiff has been diagnosed with alcoholic neuropathy and no longer drives because she cannot feel the gas pedal. Her brother or sister takes her shopping and to medical appointments. She has no problem with personal care, does laundry and household chores, prepares simple meals,

helps her mother make dinner, and waters the trees outside her home 20 minutes every third day.

On June 28, 2011, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning January 15, 2009. On October 31, 2012, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On December 17, 2012, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On June 11, 2014, Plaintiff sought review by this Court.

## II.   STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains

substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

**III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

The Commissioner will take administrative notice of reliable job information from various governmental and other publications, but relies primarily on the *Dictionary of Occupational Titles* published by the Department of Labor and its companion

publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*. 20 C.F.R. § 404.1566(d); SSR 00-4p.

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, and that she has not engaged in substantial gainful activity since January 15, 2009, the alleged onset date. At step two, the ALJ found that Plaintiff has the following severe impairment: alcoholic neuropathy. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with frequent pushing and pulling with the upper and lower extremities bilaterally, frequent climbing ramps and stairs, frequent balancing, stooping, kneeling, crouching, reaching, handling, fingering and feeling, no climbing ladders, ropes or scaffolds, occasional crawling, with the need to avoid environmental factors such as extreme temperatures, vibration and hazards.

The ALJ explicitly considered Plaintiff's subjective symptom testimony, third-party reports, objective medical records, treatment notes, the opinion of the state agency examining physician, Benjamin Loveridge, M.D., and the opinions of the state agency's reviewing physicians, which include a physical residual functional capacity assessment by Nancy Armstrong, M.D. The ALJ noted that there were no functional capacity assessments of record from any treating sources.

At step four, the ALJ also found that Plaintiff is able to perform her past relevant work as a waitress "as actually and generally performed." (Doc. 14-3 at 20.) Therefore, the ALJ did not proceed to step five and did not determine whether, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

## IV. ANALYSIS

Plaintiff contends that "the ALJ erred in finding that she can perform her past relevant work, as the job of waitress requires standing/walking the entire workday, because the opinions relied upon by the ALJ to form his [residual functional capacity] finding explicitly state that Ms. Folsom cannot stand/walk for an entire 8 hour period." (Doc. 15 at 5.) Plaintiff does not object to the ALJ's residual functional capacity finding that she can perform "light work" as defined by Social Security regulations, which may require "a good deal of walking or standing," or his reliance on opinions finding that Plaintiff could perform a wide range of light work activity. Plaintiff essentially contends that the ALJ erred by relying on the vocational expert's opinion that an individual with residual functional capacity to perform light work is able to perform the job of waitress and on the *Dictionary of Occupational Titles*' classification of waitress as light work.

### A. The ALJ Did Not Err in Finding Plaintiff Capable of Performing Light Work.

A claimant's residual functional capacity is "what an individual can still do despite his or her limitations" "based on all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling 96-8p. The ALJ considers medical source opinions from three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* at 830; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and

legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, there is no functional capacity assessment from a treating physician for the ALJ to consider. The ALJ gave "some weight" to the consultative examination report of the state agency physician, Benjamin Loveridge, M.D., who examined Plaintiff on February 20, 2010. The ALJ stated that he gave the opinion "some weight based on the objective nature of Dr. Loveridge's exam to the extent it supports a finding for a wide range of light work activity with additional nonexertional limitations." (Doc. 14-3 at 20.) The ALJ noted that Dr. Loveridge assessed no postural, manipulative, or environmental limitations and no limitations on lifting and carrying whereas the ALJ's residual functional capacity assessment includes many such limitations.

The ALJ stated that Dr. Loveridge opined that Plaintiff could stand and walk 4-6 hours during a normal 8-hour day, with breaks every 30-45 minutes, but did not say that he adopted Dr. Loveridge's opinion regarding limitations on standing and walking. The ALJ noted that Dr. Loveridge observed Plaintiff moving about the exam room without difficulty and with normal gait and no discernible discomfort. The ALJ stated that Dr. Loveridge's upper extremity findings included no weakness or atrophy, with normal sensation. The ALJ concluded that Dr. Loveridge's objective findings undermine Plaintiff's musculoskeletal complaints and alleged limitations. Moreover, Dr. Loveridge stated that although Plaintiff reported bilateral leg pain from her knees to her feet for the past year with constant aching that interfered with her sleep, his findings on physical examination "were not commensurate with complaints." Dr. Loveridge also stated that Plaintiff reported she could do all activities of daily living without assistance, including driving. Dr. Loveridge opined that her pain was likely due to restless leg syndrome, but possibly diabetic neuropathy.

The ALJ gave "significant weight" to the opinions of the state agency's reviewing physicians "because their opinions were not inconsistent with the greater objective record, particularly regarding their finding that the claimant could perform a wide range of light work activity" with some postural and environmental limitations. (Doc. 14-3 at 20.) Nancy Armstrong, M.D., reviewed Plaintiff's records on October 5, 2011, and completed a Physical Residual Functional Capacity Assessment, citing the record evidence on which her conclusions were based. She noted that on April 4, 2011, an emergency room physician suspected Plaintiff's symptoms were related to her alcohol abuse; on May 20, 2011, Plaintiff was diagnosed with alcoholic neuropathy; on June 10, 2011, Plaintiff continued to have numbness of the feet, but the tingling and pain in her hands had improved; and on May 20, 2011, Plaintiff's condition was "expected to further improve with continued avoidance of alcohol and Vicodin." (Doc. 14-11 at 65.) Regarding limitations on standing and walking, the form used by Dr. Armstrong had four options: "less than 2 hours in an 8-hour workday," "at least 2 hours in an 8-hour workday," "about 6 hours in an 8-hour workday," and "medically required hand-held assistive device is necessary for ambulation." Dr. Armstrong selected the least restrictive option, "about 6 hours in an 8-hour workday." Dr. Armstrong did not opine that Plaintiff was not able to stand and/or walk more than 6 hours in an 8-hour workday.

On May 16, 2012, on reconsideration of Plaintiff's claim, Jean Goerss, M.D., reviewed all of the records, found no objective evidence of peripheral neuropathy, and spoke by telephone with Plaintiff's current treating physician who had seen Plaintiff three times. Dr. Goerss noted that the treating physician reported Plaintiff had a normal gait and sensorium. Dr. Goerss opined that Plaintiff's subjective sensations may be due to alcoholism and early subclinical neuropathy that currently does not limit functioning. Dr. Goerss opined that Plaintiff is able to stand and/or walk about 6 hours in an 8-hour workday.

The ALJ stated that his residual functional capacity assessment "is supported by the findings and opinions of the state agency's examining and reviewing physicians, in

1  conjunction with the claimant's reported activity levels." (Doc. 14-3 at 20.) He further
2  stated, "There are no residual functional capacity assessments of records from any
3  treating sources, and progress records fail to show the claimant is unable to perform a
4  wide range of light work activity, as established." (*Id.*)

5          The ALJ found Plaintiff's statements concerning the intensity, persistence, and
6  limiting effects of her alleged symptoms not credible to the extent they were inconsistent
7  with his residual functional capacity assessment. As required, the ALJ provided specific,
8  clear, and convincing reasons for the partially discrediting Plaintiff's testimony by
9  identifying specific contradicting evidence in the objective record, Plaintiff's reports of
10 her activity level, and inconsistent statements regarding alcohol consumption. *See*
11 *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Plaintiff does not challenge the
12 ALJ's credibility determination.

13         The ALJ's residual functional capacity assessment does not include a limitation on
14 standing and walking. It incorporates by reference the definition of "light work," which
15 includes that the job may require "a good deal of walking or standing." 20 C.F.R.
16 §§ 404.1567(b), 416.967(b). "Light work involves lifting no more than 20 pounds at a
17 time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* "Since
18 frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the
19 full range of light work requires standing or walking, off and on, for a total of
20 approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251.

21         Therefore, in making his residual functional capacity determination, the ALJ did
22 not reject the opinion of a treating physician, and he gave clear and convincing reasons,
23 supported by substantial evidence in the record, for partially rejecting the opinion of the
24 examining physician, Dr. Loveridge. The ALJ was permitted to give significant weight
25 to the opinions of non-examining physicians, Dr. Armstrong and Dr. Goerss, because the
26 opinions were consistent with other evidence in the record.

**B.     Plaintiff Did Not Prove She Is Incapable of Working as a Waitress.**

At step four, the claimant has the burden of showing she can no longer perform her past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ may conclude the claimant can perform past relevant work by finding she is able to perform the actual functional demands and duties of a particular past relevant job *or* she is able to perform the functional demands and duties of the occupation as generally required by employers throughout the national economy. *Id.* at 845. Thus, at step four, the claimant has the burden to prove she cannot perform her prior relevant work either as actually performed or as generally performed in the national economy. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008).

Although the burden of proof rests with the claimant at step four, the ALJ must make factual findings to support his conclusion by looking at the residual functional capacity and the physical and mental demands of the claimant's past relevant work. *Pinto*, 249 F.3d at 844-45. The ALJ is not required, however, to make explicit findings regarding a claimant's past relevant work both as generally performed *and* as actually performed. *Id.* at 845. The ALJ may assess a claimant's past relevant work as actually performed by considering a properly completed vocational expert's report and/or the claimant's own testimony. *Id.* "The best source for how a job is generally performed is usually the *Dictionary of Occupational Titles*." *Id.*

Plaintiff worked as a waitress from 1994 to January 2009. In her Work History Report, Plaintiff reported that in her job as waitress she walked a total of 8 hours each day, stood a total of 7 hours each day, sat a total of 1 hour each day, stooped a total of 8 hours each day, kneeled a total of 2 hours each day, crouched a total of 8 hours each day, reached a total of 8 hours each day, and wrote, typed, or handled small objects a total of 8 hours each day. She apparently misunderstood the questionnaire because she could not have walked, stood, sat, stooped, kneeled, and crouched simultaneously and did not work more than 40 hours in an 8-hour workday.

At the administrative hearing, Plaintiff testified that in 2010 and 2011 she applied for work because she had applied for unemployment insurance benefits (which she did not receive). When asked why she stopped waitressing in 2009, she testified that she did not have the strength in her arms or the balance to carry heavy plates or trays. Her attorney then asked if her neck and back issues limited her ability to stand for periods of time, and she responded they did. She said she could stand 30-45 minutes before she would have to sit down and could walk for about 20 minutes. But the ALJ did not find that Plaintiff's neck and back issues constituted severe impairments, and he found Plaintiff's subjective symptom testimony to have diminished credibility. And Plaintiff did not testify about the amount of time she was required to stand and/or walk in her past work as a waitress. Thus, Plaintiff submitted almost no evidence regarding her past relevant work as actually performed.

At the administrative hearing, the vocational expert testified that she had reviewed the record and listened to the testimony regarding Plaintiff's work history. She classified Plaintiff's past relevant work as a waitress with *Dictionary of Occupational Titles* number 311.477-030, which is identified as light work as generally performed. The ALJ posed a hypothetical to the vocational expert that included the residual functional capacity to perform light work with certain postural, manipulative, and environmental limitations. He asked the expert whether the claimant, with that residual functional capacity, could perform the past relevant work. The expert responded, "Yes." (Doc. 14-3 at 58-59.)

Plaintiff's attorney asked the vocational expert whether her answer regarding ability to perform past work would change if the amount of weight to be lifted were changed. Plaintiff's attorney did not ask the vocational expert any questions regarding standing and/or walking or the classification of the job of waitress as light work. The ALJ clarified that when he describes an individual's residual functional capacity as capable of performing light work as defined in the Social Security regulations, it

1 presumes the limitations for light work.  The vocational expert confirmed that she had
2 interpreted his hypothetical as presuming the limitations for light work.

3   The ALJ did not err in his residual functional capacity determination, which did
4 not limit the amount of time Plaintiff is able to stand and/or walk beyond the limitations
5 imposed for "light work" as defined by Social Security regulations (*i.e.*, "requires a good
6 deal of walking").  He did not err by relying on the vocational expert's classification of
7 Plaintiff's past relevant work as waitress, identified as *Dictionary of Occupational Titles*
8 311.477-030.  He did not err by relying on the *Dictionary of Occupational Titles*'
9 assessment of 311.477-030 (Waiter/Waitress, Informal) as light work.  Moreover, the
10 ALJ made specific findings to support his conclusion that Plaintiff is able to perform her
11 past relevant work as a waitress (DOT 311.477-030) as actually and generally performed.
12 He was not required to consider arguments Plaintiff makes now, but did not make then,
13 that common experience is substantial evidence that a waitress must sometimes be able to
14 stand and/or walk for an entire 8-hour workday.

15   The Court may set aside the Commissioner's disability determination only if the
16 determination is not supported by substantial evidence or is based on legal error.  *Orn v.*
17 *Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is relevant evidence that
18 a reasonable person might accept as adequate to support a conclusion considering the
19 record as a whole.  *Id.*  Here, the disability determination is supported by substantial
20 evidence and is not based on legal error.

21   IT IS THEREFORE ORDERED that the final decision of the Commissioner of
22 Social Security is affirmed.  The Clerk shall enter judgment accordingly and shall
23 terminate this case.

24   Dated this 9th day of April, 2015.

Neil V. Wake
United States District Judge

- 11 -